# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **Frey Real Estate, LLC,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:25-cv-01308-ADA-SH** |
| | § | |
| **Ewing Irrigation Products, Inc.,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:    THE HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Ewing Irrigation Product, Inc.'s Motion to Partially Dismiss Plaintiff's First Amended Complaint, filed December 5, 2025 (Dkt. 10); Plaintiff's Response, filed January 9, 2026 (Dkt. 14); and Defendant's Reply, filed January 21, 2026 (Dkt. 16).[1] On March 4, 2026, the Court held a hearing on the motion at which both parties appeared through counsel.

## I.    Jurisdiction

Ewing is a Nevada corporation with its principal place of business in Arizona. First Amended Complaint, Dkt. 8 ¶ 9. Plaintiff Frey Real Estate, LLC did not plead citizenship of its members, but represented at the hearing that its only members are Texas citizens Leonard "Tres" Frey III and Alison Davis Frey. The Court finds that subject matter jurisdiction exists under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. *SXSW, LLC v. Fed. Ins.*, 83 F.4th 405, 407 (5th Cir. 2023).

---

[1] The District Court referred to this Magistrate Judge all non-dispositive pretrial matters for disposition and all case-dispositive motions for findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, and Judge Alan D Albright's Standing Order on referrals to United States Magistrate Judges. Dkt. 3.

## II.   Background

Frey owned Texas Landscape Supply ("TXLS"). Dkt. 8 ¶¶ 11, 19-24. Ewing offered to buy TXLS for "$20 million payable at closing and an additional $12 million tied to a two-year Earnout based on post-closing performance." *Id.* ¶ 33. Frey accepted the offer, and the parties executed an Asset Purchase Agreement ("Agreement"). *Id.* ¶ 37.

The Agreement:

(1) required Frey to give Ewing TXLS records so Ewing could start integrating TXLS and its larger business, § 1.1, Dkt. 10 at 15-16;

(2) included terms for post-closing earnout payments based on financial performance, § 1.4, Dkt. 10 at 17-19;

(3) set an inventory valuation process for accounting and to calculate the final purchase value, § 1.5, Dkt. 10 at 19-20; and

(4) governed post-closing operation of TXLS, § 1.6, Dkt. 10 at 20.

Frey alleges that Ewing violated §§ 1.4-1.6 of the Agreement by changing TXLS's core operating model; diverting profits from TXLS to reduce Frey's earnout payments; manipulating inventory accounting; and refusing to explain or support accounting it submitted to Frey, costing Frey "millions in Earnout compensation." Dkt. 8 ¶¶ 45-47. Frey also alleges that Ewing misrepresented its intent to preserve TXLS's operating model, which Frey relied on during the sale. *Id.* ¶¶ 97-99.

Frey asserts claims for breach of contract and fraud in the inducement. *Id.* ¶¶ 84-101. Ewing asks the Court to dismiss under Rule 12(b)(6) the fraud in the inducement claim in its entirety and the breach of contract claim "to the extent it is premised on Ewing's integration of TXLS into its business." Dkt. 10 ¶ 3-4.

## III.   Legal Standards

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But "conclusory allegations,

unwarranted factual inferences, or legal conclusions are not accepted as true." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (citation omitted). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In determining whether a plaintiff's claims survive such a motion, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021). Rule 12(b)(6) motions are "viewed with disfavor and rarely granted." *Hodge*, 90 F.4th at 843 (citation omitted).

## IV.   Analysis

Because this case is before the Court on diversity jurisdiction, Texas substantive law applies. *Jack v. Evonik Corp.*, 79 F.4th 547, 555 (5th Cir. 2023).

### A.   Fraud in the Inducement

To plausibly state a claim of fraud in the inducement under Texas law, a plaintiff must allege: (1) the defendant made a material representation; (2) the representation was false; (3) the defendant knew the representation was false or made it recklessly as a positive assertion with no knowledge of its truth; (4) the defendant intended to induce the plaintiff to act on the representation; (5) the plaintiff actually and justifiably relied upon the representation; and (6) the plaintiff suffered injury. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018). Ewing argues that any reliance by Frey was not justifiable as a matter of law because the Agreement

contains a disclaimer of reliance and the alleged material misrepresentations are expressly contradicted by the Agreement. Dkt. 10 ¶¶ 13-18.

### 1. No Disclaimer

Under Texas law, a contract is subject to avoidance on the ground of fraudulent inducement. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011). It has long been the rule that "a written contract even containing a merger clause can nevertheless be avoided for antecedent fraud or fraud in its inducement and that the parol evidence rule does not stand in the way of proof of such fraud." *Noroc Partners, LLC v. Ponder*, No. 1:25-CV-00655-ADA-SH, 2025 WL 2647588, at *5 (W.D. Tex. Aug. 27, 2025), *R. & R. adopted*, 2025 WL 2648253 (W.D. Tex. Sept. 15, 2025) (quoting *Italian Cowboy*, 341 S.W.3d at 331).

The Texas Supreme Court has recognized an exception to this rule, holding that "when sophisticated parties represented by counsel disclaim reliance on representations about a specific matter in dispute, such a disclaimer may be binding, conclusively negating the element of reliance in a suit for fraudulent inducement." *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229 (Tex. 2019) (quoting *Italian Cowboy*, 341 S.W.3d at 332). But that court has

> repeatedly held that to disclaim reliance, parties must use clear and unequivocal language. This elevated requirement of precise language helps ensure that parties to a contract—even sophisticated parties represented by able attorneys—understand that the contract's terms disclaim reliance, such that the contract may be binding even if it was induced by fraud.

*Italian Cowboy*, 341 S.W.3d at 336 (citation omitted). "Pure merger clauses, without an expressed clear and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement, have never had the effect of precluding claims for fraudulent inducement." *Id.* at 334.

To determine whether a given clause disclaims reliance, courts look to both the language of the clause and the context of the agreement. *Id.* at 333-35.

4

Ewing argues that fraudulent inducement is clearly disclaimed by § 8.4 of the Agreement:

> **Entire Agreement; Amendments and Waivers.** This Agreement, together with the agreements specifically referenced herein, the Ancillary Documents and all exhibits and schedules hereto, constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. No amendment, supplement, modification or waiver of this Agreement shall be binding unless executed in writing by the party to be bound thereby. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

Dkt. 10 at 33. During the hearing, Ewing argued that there is no bright line rule that "reliance" must be explicitly stated, and that the context of extensive negotiations and contractual safeguards to Frey's interests make clear that § 8.4 disclaimed reliance.

The Court finds that § 8.4 is a standard merger clause, disclaiming only "the *fact* that no other representations were made"; it does not disclaim "*reliance* on certain representations." *Italian Cowboy*, 341 S.W.3d at 335. So Section 8.4 does not clearly and unequivocally disclaim reliance or waive claims for fraudulent inducement.

The context of the Agreement supports this conclusion. Business agreements "should be all the more clear and unequivocal in effectively disclaiming reliance and precluding a claim for fraudulent inducement." *BigCommerce, Inc. v. Cover Genius Warranty Servs., LLC*, No. 1:23-cv-298-DAE, 2025 WL 1270110, at *9 (W.D. Tex. Feb. 27, 2025) (quoting *Italian Cowboy*, 341 S.W.3d at 335) (finding that reliance was not disclaimed by a standard merger clause in a business partnership agreement). And the Agreement contains a disclaimer of reliance at § 3.17, highlighting its absence from § 8.4. Because the Agreement contains a standard merger clause in the context of a business agreement, the Court finds that reliance was not disclaimed and Frey's fraudulent inducement claim is not barred.

Ewing argues that *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 473 (Tex. 2022), controls and asks the Court to apply its five-part test. *Transcor* applies when determining "[w]hether a reliance disclaimer is effective." *Id.* Because no reliance disclaimer exists here, the Court does not apply *Transcor*.

### 2. Not Expressly Contradicted

Under Texas Law, "reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Orca Assets*, 546 S.W.3d at 658. The contradiction must be so clear that "a reasonable person could not read the agreement and still plausibly claim to believe the earlier representation." *Id.*

Ewing argues that § 1.1 of the Agreement makes clear that "it was Ewing's stated intention to integrate TXLS into its wider business." Dkt. 10 ¶ 13. Section 1.1 provides that Ewing "further acknowledges and agrees that the sole purpose for which it may use the Transition Information is to commence the process of integrating [Ewing's] business with that of [Frey] in light of the pending consummation of the transaction contemplated by this Agreement." Dkt. 10 at 16. Ewing contends that § 1.1 "expressly contradicts" any representation that it would "maintain TXLS's prior business model and structure," making reliance on such representations unjustified. *Id.*

Frey "does not challenge integration itself" but Ewing's allegedly "false promises about *how* it would integrate and operate the business." Dkt. 14 ¶ 13. Frey specifically relies on promises to "preserve the TXLS operating model" and "maximize the Earnout." Dkt. 8 ¶ 99. Because the method of integration is not addressed in § 1.1, Frey's fraudulent inducement claim is not barred by direct contradiction. *See WC 1899 McKinney Ave., LLC v. STK Dallas, LLC*, 380 F. Supp. 3d 595, 606 (W.D. Tex. 2019) (denying plaintiff's motion for summary judgment on affirmative

6

defense of fraudulent inducement because plaintiff "has not identified a contractual provision directly contradicting the alleged misrepresentation" on which defendant relied).

At the hearing, Ewing also argued that the allegations of fraudulent inducement pertain to commercial reasonableness and form the basis of Frey's breach of contract claim under § 1.6. Ewing contended that such allegations cannot form the basis for both claims.

The Texas Supreme Court has "repeatedly recognized that a fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). The fraudulent inducement claim is based on "an independent legal duty, separate from the existence of the contract itself," that precludes the use of fraud to induce a binding agreement. *Id.* at 47. The Court finds that Frey's allegations may form the basis of both its fraudulent inducement and breach of contract claims.

## B. Breach of Contract

A claim for breach of contract under Texas law requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

Ewing argues that Frey's breach of contract claim fails to the extent it is based on Ewing's integration of TXLS because integration was "expressly authorized by the agreement" and cannot constitute a breach. Dkt. 10 ¶¶ 19-20. Frey responds that its breach of contract claim does not challenge integration itself but the manner of integration, which it alleges violated the post-closing operational constraints imposed by § 1.6.

7

The Court agrees. In its First Amended Complaint, Frey alleges that Ewing breached the Agreement by:

- "retroactively adjusting the agreed-upon inventory valuation and writing off approximately $581,674 in inventory months after the final valuation was set," Dkt. 8 ¶ 89;

- "failing to promptly and accurately calculate TXLS's EBITDA and refusing to provide Frey Real Estate with documentation sufficient to 'verify the analysis and computation of EBITDA,'" *id.* ¶ 90; and

- "failing to use commercially reasonable efforts to operate TXLS in a manner that maximized the Earnout, and by taking actions lacking any independent commercially reasonable business purpose that materially reduced TXLS's reported EBITDA and Frey Real Estate's Earnout," *id.* ¶ 91.

Because Frey's breach of contract claim is not "premised on Ewing's integration of TXLS into its business," Dkt. 10 at 3, this Magistrate Judge recommends denying Ewing's motion to dismiss the breach of contract claim in part.

## V.    Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **DENY** Defendant Ewing's Motion to Partially Dismiss Plaintiff's First Amended Complaint (Dkt. 10).

## VI.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and

8

legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **SIGNED** on March 6, 2026.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

9